Case number 251278 Aaron Hall et al. versus Trivest Partners LP et al. Ordered arguments not to exceed 15 minutes per side. Mr. Schmalzbach, you may proceed for the appellate. Good morning, your honors, and may it please the court. Brian Schmalzbach for the original Trivest defendants in this case. I'd like to reserve three minutes for rebuttal. All right. Which one are we doing right now? We're doing the RICO one right now. Yeah, I know. Are we doing the arbitration part or? I'm sorry, the RICO personal jurisdiction and merits one. Okay. Thank you. Your honors, this case is an attempt to weaponize RICO against a Florida minority investor with no ties to Michigan for actions of a separate company it did not control. I'd like to address those two issues before this court. First, whether RICO even applies to these allegations in the first place. And second, whether the ends of justice under section 1965B require litigating this case in Michigan. How can we get to your first question? Is that really certified for our appeal? So it's part of the order, your honor, and the most straightforward reason it's part of the order is that Judge Beam in the district court treated it as part of the ends of justice analysis. And you can see that at pages 303 and 568 of the record. Because she treated it as part of the record, it comes up with that certified order to this court. What's the it here again? Sorry to be slow this morning. What's the it? It comes up. Sorry, the it is the question whether RICO applies to these allegations in the first place. And the basic point is if RICO doesn't apply, then 1965B doesn't apply either. Okay. Yeah. All right. So, your honors, this is an important question that even the district court saw as a close call. And as I said, it's important to the district court's RICO jurisdictional analysis, too. But it was only a close call because the district court watered down Rule 9B. Here, there are no particularized allegations of any false statement that Trivest caused to be sent, which is the only conclusory allegation about Trivest. Or that Trivest even knew were false in the first place. So that line of holding the plaintiff to those particularized allegations should be placed carefully for minority non-control investors like Trivest. Because they provide an important source of funding for American small business that is threatened by this ruling. But I would also like to address the jurisdictional question on Section 1965B. It seems like we have to go to this jurisdictional part before any of this business about Rule 9 or anything like that. I think you have discretion, but it's certainly appropriate to reach it. And on that issue, your honor, our pitch is that you should just apply the traditional tools of statutory construction and the text and structure resolve this case. The correct interpretation based on those textual and structural cues is that the ends of justice require suit outside of the traditional venue, outside of what Section 1965A provides, only if there's no available venue where all defendants can already be sued together. You know, this statute doesn't necessarily comport with your argument. Because if we just go by the literal wording of Section 1965B, it doesn't give you the result that you're looking for. You have to bring some interpretation or deducement to this statute to make your jurisdictional argument. Wouldn't you agree? I would not agree, your honor. I think what's doing the work here are the words ends of justice require. And so the burden is on the plaintiff to show that the ends of justice require. And based on that word require, which we have to give some effect to. But the statute doesn't say all that. It's the problem. And we've got, well, actually we have two circuits going different ways on the issue. But the Tenth Circuit case seems to go along with the concept that there's liberal jurisdictional parameters that the courts should entertain in these RICO matters. And you're kind of swimming against that tide, don't you think? No, your honor. We have a one-to-one circuit split. We have the Ninth going our way and the Tenth going the other way. And I'd like to just address that argument that the Tenth Circuit make, which is that this RICO liberal construction principle requires a different interpretation. Because I think that's the exact argument that this court rejected in Peter's broadcasting. And what Peter's broadcasting holds is that as long as the interpretation of Section 19… Is that a RICO case? Yes, your honor. It was a 1965 case too. And it says as long as the interpretation ensures at least one federal forum for all defendants in a single civil RICO trial, then that liberal construction principle is satisfied. And that's exactly what our interpretation, what the Ninth Circuit's interpretation does here. To me, I'm not entirely convinced that there is a federal forum here. Isn't there some question about whether or not Waller is subject to jurisdiction in Florida or not? The plaintiffs have raised that question, your honor. I think the district court agreed with us and said that on page 305 it does appear that the entire case could be litigated in Florida. What is the theory under Florida long arm statute or due process that Waller, that Florida would have jurisdiction, personal jurisdiction over Waller? Right, so it's a RICO 1962C theory where you're participating in the conduct of an enterprise through a racketeering activity. And that alleged racketeering activity, according to the complaint, is that you are sort of conspiring to make this company, Power Home Solar, you know, release these misleading advertisements. And the way that that connects to Florida is that TriVest is in Florida and it's those conversations, alleged conversations, between Waller and TriVest in Florida that are that racketeering activity, according to the complaint. And so we think the district court was right about that. But, your honor, even if you have questions about that, I think the right thing to do is to reverse because the district court applied the wrong legal test under 1965B and let the district court sort out that factual question of applying that statute to determine. If we took that course, what happens to the, I know we've got another case, but what happens to the arbitration issue? Do we just hold on to it or do we send that back? To the district court as well or what? I think you can just hold on to it and allow the district court to take... I guess that's the virtue of having two cases, huh? Right. You have optionality, for sure. Yeah, I mean, but all this piecemeal litigation over this, I mean, we've got two appeals here. We send one back for one issue, one determination. It comes back again. I mean, that's a really disfavored way of doing appellate business. I mean, there's a real cost to us in just sending chunks of this back. And so that's something to bear in mind, I guess. Certainly, your honor. And you, of course, have discretion to decide them in the order that you prefer. I don't think there's a risk under what I proposed of the case coming back to you in that posture. Either it would be dismissed or transferred to the Southern District of Florida. Well, didn't Waller, doesn't he have a place, like a registered place of business in Florida? So he is now a Florida resident, your honor, yes. I mean, I guess, I don't know if there's a temporal aspect to this, you know. Did he have a place of business in Florida at the relevant time for purposes of Rule 4, I guess it is? So it's not alleged in the complaint that he did, no. We know through subsequent discovery in the case that he now lives there, which is why I bring it up. Well, did you ask the district judge to rule on whether there was personal jurisdiction over Waller in Florida when this matter was before the district court? Because we'd be sort of sending this thing back without knowing if there's even personal jurisdiction. We'd be sending it back for the district judge to make that determination. Along the lines of what Judge Kethledge was saying, it seems to be difficult to send it back just for that one determination. I think that's a very common course in a 1292B appeal, your honor, that there's a legal question. That's what 1292B is for, is resolving that legal question. And then once you resolve it, you let the district court determine how that cashes out in the case. But that's a very discreet issue that could have been addressed before this appeal as to whether there was personal jurisdiction over Mr. Waller in Florida. There's been no determination of that. We think there has been, your honor. The district court did make that finding. It appears the entire case could be litigated in Florida. That's at page 305 of the record. Well, no. That's different from a ruling as to whether there's personal jurisdiction over Mr. Waller in Florida, whether he met all the criteria under the case law for personal jurisdiction. Are you saying the court made that express ruling? I think in – so I understand what you're saying, that she didn't use the words personal jurisdiction in that sentence. No, I mean, that's not what I'm – I'm not asking you to infer anything. I'm just asking if the district judge expressly ruled upon that, the issue of personal jurisdiction over Mr. Waller in Florida. Right. I think the better reading of page 305 is that she did because she's responding to our argument that – What do you mean the better ruling? I asked if she made an express ruling. That's pretty much a yes or no answer. I understand, Your Honor. Apologies. No, she did not make an express ruling using the words personal jurisdiction. I think that is what she meant by what she said. Well, that's not what I'm asking. Okay. You can proceed. Yeah. But if you have any questions about that, then the right course is to tell the district courts what the proper legal test is, which is why this appeal was granted in the first place, and then let the district courts sort out how that applies to the facts of this case. The course is we have to address the personal jurisdiction question. We can't just leapfrog and go to the arbitration question. We have to address whether it is personal jurisdiction, don't we? Some cases have treated it as within the discretion, whether you send a case to arbitration or apply personal jurisdiction tests first. But we have asked for you to resolve personal jurisdiction first. That was the issue that we raised first, and that would be appropriate here. If I may just, I guess, interrupt you for a second. When did the defendants here, and I guess it would be the various Trivest defendants, when did they raise this sort of Rule 4 personal jurisdiction issue? Was that something you all flagged, like, at the outset? Yes, Your Honor. That was in our first motion. How come it took two years to adjudicate? I mean, am I missing something? I mean, the case was down there for two years, right? Yes, Your Honor. We moved to dismiss for under 12b-2, and we received a ruling, and then we asked for that ruling to be certified under 1292b. And it was, and we filed a prompt request, a petition for permission to appeal. It took about a year to have resolution on that, and that's why there's a little bit of a lag. I mean, it's quite a long time. I mean, you know, on the arbitration side, you guys have been kind of marked down for waiting two years or whatever. And meanwhile, I mean, we have a threshold issue that seemed to have been in the court for two years before, you know, we get it. It just seems quite strange. I think it's a function of how long the 1292b process takes. I mean, we certainly raised that as soon as we could. There's been no suggestion that that was the case.  Well, that's helpful. I see that I'm out of time. Yes, you're having a rebuttal. Yes. Good morning. You may proceed. Good morning, Your Honors. May it please the Court, Nicholas Colson on behalf of Plaintiffs Appellees, Mr. Hall, Ms. Glodd, and Mr. Binder. The defendants asked, the Tribest defendants asked the Court today to resolve a complex legal issue of some significance. That's what we do. But it's in a case, Your Honor, where resolution of the issue is entirely immaterial and therefore it's unnecessary and it's inappropriate. And so we request that either the district court's order be affirmed or that the certificate of appealability be vacated because there's no controlling issue of law and this appeal cannot materially change the outcome. How is the Court's power to adjudicate the rights of various parties before it, i.e. personal jurisdiction, how is that immaterial? Conceptually, it's not, Your Honor. And in a case where the facts could lead to divergent outcomes, it would certainly be a material issue and it could certainly materially affect the outcome of the case. The issue here, and I think that some context for some of the district court's ruling here is helpful, and why, for example, the district court said that it appears this entire case could have been brought in Florida, is that when the defendants moved to dismiss, they filed a motion to dismiss under Rules 12b-2, 12b-6, and 12b-7 for failure to join an indispensable party. Which motion package are we talking about? Because there were a couple of those. This was their initial response to the complaint. The old Tribest people or what? The original Tribest defendants, correct, Your Honor. And they moved to dismiss arguing only that there was a lack of traditional personal jurisdiction. They did not address RICO jurisdiction. We raised it in response, and so they started talking about the issue of RICO jurisdiction for the first time in their reply. We never had the opportunity to even respond in the form of a brief to their argument that the case could have been brought in Florida. But you won. We certainly did, Your Honor. That's the harm done. We have no qualms there. We've been down there for a long time. We're not going to send it down for a brief. Certainly understood, Your Honor. The only point I wanted to make there is that I think it should inform how the court views the district court's statement. Oh, sure. That it appears the case could have been brought in Florida. But, I mean, you know, Judge Bean said it did appear that way, and there's reason for that. Understood, Your Honor, but it was based on arguments and evidence that were introduced for the first time on reply, and I think at a minimum that's important for context. Okay. Let's get to the merits, though. Certainly, Your Honor. So it was the defendant's burden under a motion under Rule 12b-2, if the complaint states a prima facie case of personal jurisdiction, it's then the defendant's burden to rebut that with evidence. But, you know, part of that process is just a proper interpretation of 1965b, right? It is, Your Honor. And that's going to, I mean, whichever way that goes, a lot of other things are going to go, too. I don't necessarily disagree, Your Honor, that the analysis of what does the standard require is obviously an important part of the process. Yeah. But the reason it's immaterial here is that the argument that the defendant now makes or the defendants now make on appeal about the basis for jurisdiction over Mr. Waller in the state of Florida was never raised to the district court. That's a brand-new argument that I just heard for the first time as I sat at the council table.  Well, that's important to know. And it's also important to note that, obviously, jurisdiction is determined at the time of the filing of the complaint. Mr. Waller moved to Florida subsequent to the filing of the complaint. We actually, after this order at the district court, Mr. Waller did challenge personal jurisdiction in Michigan, and the court performed a lengthy analysis of that. And in that process, he represented even then that he was a resident of the state of North Carolina. So there's no doubt. That's our understanding, I think. And so there were two bases, Your Honor, that they said that Mr. Waller should have been subject to suit in Florida. All right. Well, let's get to, what, 1965b. Certainly, Your Honor. If we may. And, I mean, so the, you know, I mean, why isn't it kind of apparent on the face of this provision that, you know, at a minimum, what this is telling us is that hailing defendants into a federal district court, in which, you know, like as a matter of state long-arm jurisdiction, they would not be subject to personal jurisdiction. You know, like offending the due process principles, for example, in Worldwide Volkswagen, and all of the Supreme Court's personal jurisdiction, I mean, those are important interests. The court has said those protect the liberty of the defendants, and they limit the power of courts. So those are really important due process interests that are offended when a defendant is hauled into, or I don't know if it's hailed or hauled, but maybe both, into court, okay, in some, you know, jurisdiction in which the defendant has no real contacts. I mean, why isn't this telling us that the district court may do that only as a last resort when the ends of justice require, require? And, I mean, just as an interpretive matter, would you agree with that, or is this some open-ended balancing test where the court can just decide what's convenient, which seems like a quite different question than the one posed by the statute? Your Honor, I don't think that it's open-ended, but I do think that it has to be flexible. It's a common refrain.  I don't think this is terribly drafted. And flexibility is not necessarily a virtue in the law. That means you get ad hoc decision-making. People don't know what their rights are until a judge announces them, as opposed to something that is more like a rule, which is if these circumstances are present, this outcome follows, and then you kind of have an idea where you stand. I mean, this is, what I was suggesting is this kind of looks like a rule, not some balancing test where it's like, oh, well, you know, I don't know, it's more convenient to do it here than there, which is, you know, well, anyway. Your Honor, we have to presume that Congress understood what they, you know, the language that they were using. And if they wanted to say that this is the single determinative factor in either direction, it would have been remarkably easy for them to say that. And the term ends of justice has a historical meaning in the context of the Supreme Court's antitrust jurisprudence and in other places. And so using a term like, placing that amount of work on a term like requires, when it's in conjunction with a term as malleable as the idea of the ends of justice, it's sort of a legal equivalent of the reasonable person, that is intended to confer substantial discretion on the district court. Now, I do think that. The word require starts taking away discretion. I think that it does, Your Honor, in that it requires the court to seriously look at the circumstances of the case, like the district court did here, and look at some of these other considerations regarding what the ends of justice require. But it's just, if you look at the analysis that the Ninth Circuit approach employs versus the Tenth Circuit, the Tenth Circuit looks much more to the legislative history of the RICO Act and to the backdrop of antitrust litigation against which it was drafted. Is there any point you want to make about the antitrust context use of this term? Because that's, you know, it's a good point you make. That it was both the context in which antitrust law applied for the ends of justice was known at the time that RICO was drafted. What was it? How would it differ from what I was suggesting in my initial point? That there has never been a single determinative factor such as that no other court could host the litigation that was assigned, such that if they wanted, if that was what they meant, not only could they have said it, but they certainly should have said it because it would have derived from the known meaning of that term as it had been employed in similar contexts. How would it depart from it? I mean, it seems to me it would be subsumed in the ends of justice, let's not violate basic due process principles, but not necessarily limited to let's not violate those principles. So, Your Honor, I think the idea that it violates, I mean, I think all service of process, which is where the personal jurisdiction derives from here, is subject to Fifth Amendment due process considerations across the board. Which could be different than 14th, but I don't think that really matters. Okay. But anyway. Fair enough, Your Honor. No, but go ahead. So the idea is that this is a term that has never reflected a single dispositive factor in any previous context. And so to use it then, we must presume that they didn't mean to add a single dispositive factor that has never been part of that analysis. By that, do you mean no factor can be dispositive or it's not limited to one such factor? Your Honor, I actually think that it's sort of a one-way ratchet in this situation, because clearly if there is no other court where the action could have been brought without resorting to RICO jurisdiction, then the ends of justice will always require exercising jurisdiction in that instance. So it's a sufficient condition, but the language of the statute and the statutory history and the backdrop of antitrust litigation all undercut against this idea that it's a necessary condition as well. And I'll stop after this, because I don't want to just take over here. But, I mean, why doesn't this simply mean, look, we want these suits to be brought, and you don't have to, like, break up a RICO suit and fragment the parties into different lawsuits to satisfy things like, you know, these due process principles, personal jurisdiction. So, you know, we want these suits to be consolidated, brought in one court, but don't run over these basic, these really sort of venerable principles unless, I mean, the circumstances require you to. Why wouldn't that be one of these? I mean, aren't these principles part of the ends of justice, at least part of them? They're considerations for sure, Your Honor, and I think that's reflected even in the way the district. And, like, I mean, due process, you know, constitutional-based principles, I mean, going back centuries. I mean, like, what would be so important that we would say, okay, we can disregard those principles and haul everybody into court here even though theoretically we could do the litigation somewhere else and not violate these principles. What could be important enough for a court to say, okay, 1965 lets me do this? So, Your Honor, I have a view about that, and I have to confess that it's not a strong view because part of what's uncomfortable about this posture is that I'm advocating for a standard where, frankly, I'm probably better off if the court accepts their standard than rules against them because we satisfy either standard. And so, absolutely. Do you think you've got personal jurisdiction over these trivest outfits?  What I mean to say is that under no circumstances would a court have traditional personal jurisdiction over Mr. Waller in Florida, meaning that there is no other court where this action could have been brought without resorting to RICO jurisdiction. Okay. And so if the court rules against the defendant's position, we may be facing petitions for rehearing, potentially petitions for cert. Yeah, you don't need that. It's not outcome dispositive in our case. And so I feel a little bit uncomfortable advocating for a standard that doesn't really affect my case. But I do think, with that said, Your Honor, I do think that it reflects a policy judgment that is specific to the RICO context and has some connections to the antitrust context where this is fundamentally a criminal statute. You have to allege a predicate act that is a crime. And so we're talking about victims of crime versus perpetrators of crime. And when you get into what we believe is the flexible ends of justice analysis, it has to be accounted for that these people, my clients, never voluntarily entered into any relationship with the trivest defendants. And their connection with them is a function of what we had to allege and will have to prove is criminal conduct. And so the ends of justice seem to counsel, at least to some extent, into taking things into account that matter for the plaintiffs or the parties or the courts and not simply the defendants because we're talking about not an ordinary civil cause of action. I mean, you chose to bring the trivest folks in. We did, Your Honor. But, of course, that's the- And they're a bit attenuated from this whole thing. I understand the court's view on that and can appreciate it. I can say we obviously have briefed the reasons that we don't believe that the court's ordinary Rule 12b6 determinations are properly before this court. Oh, yeah. But at this point, we've had the benefit of two years of discovery and the complaint would look a lot different is what I can say there. But I certainly understand that view. Thank you. I appreciate your- those are good answers. Thank you, Your Honor. I want to go to the argument briefly before my time expires, address the argument that the defendants made in the district court for the notion that a Florida court could exercise personal jurisdiction over Mr. Waller. It's a different one than was raised here and it should be the one, if any, that this court considers. The arguments were that we pled a nationwide class, irrespective of the states that Powerhome actually operated in or had customers in. And so, therefore, somehow the possibility of there being Florida class members of which there is no evidence in the record created jurisdiction here. That would be the ultimate slippery slope where basically any plaintiff in a case where there was widespread harm could sue any defendant in any forum, if they wanted to, simply by saying that there were class members in that state. There's a reason that that's never happened before. That would be atrocious policy and unmanageable for the courts. So you're saying they made one argument in the district court as to why the Florida court would have personal jurisdiction over Waller. And they're making a different argument here. That's correct, Your Honor. And they've never made an argument that connects Mr. Waller's contacts in Florida to the plaintiff's claims. We can't consider the claims of absent class members, the case has not been certified. I understand that. And I guess just as a general matter, I mean, we're going to disfavor new arguments here that are sprung, well, that the district court didn't get a chance to think about. Thank you, Your Honor. Thank you. Thank you. Any rebuttal? Thank you, Your Honor. On my rebuttal, I'd like to address the merits, which we really didn't touch on a whole lot when I was up here before. And I'd like to hit those three main points, text, history, and structure. Well, actually, you should be responding to counsel if you're about to introduce new arguments on rebuttal. Yes, Your Honor. I tried to lay out when I first stood up that I was going to talk about these three points. Well, I don't know if I'm saying the same thing as Judge Clay. What about the response to Mr. Colson's point that you all made one argument in the district court as to personal jurisdiction over Waller and another argument here? Is that accurate? So I think they're a fully consistent argument.  Are they? Can you recite briefly what the respective arguments are? We did argue in the district court that there was personal jurisdiction over Waller in Florida, in part because, yes, this is a nationwide class and there would have been Florida class members. But we're not saying that it's the harm to those Florida class members. It's the fact that he was in Florida doing things in Florida that contributed to this nationwide harm.  Did we argue that to the district court? In the Florida part? I don't know if it's the exact words, Your Honor. But, yes, we made this basic argument. But I would suggest that this is the sort of thing, if you have questions about what was made, what the district court held, that's grist for the remand mill. But on the textual and structural and historical points that I tried to raise when I first stood up, text, the verb is require. Require is a strong verb. It means necessity. It is inconsistent with this idea of a loosey-goosey, all-things-considered, open-textured balancing test. On structure, what this court said in Peter's balancing is that 1965A is the default and we should use 1965B as a backstop to that when it's necessary, when there's a requirement for it. There's not here. On history, this idea that standard oil creates some backdrop that says, you know, Butcher's Union was wrong, the Ninth Circuit's case was wrong, that's just simply incorrect. Standard oil does not use the words ends of justice require. It has a one-sentence jurisdictional holding. And it didn't present the fact pattern that we are saying requires jurisdiction in the default forum because there was no forum where all defendants were subject to personal jurisdiction. So standard oil is really neither here nor there. And one final point, Your Honors. On this idea, Judge Kethledge, of whether there's this open-ended balancing test, I think there is some backdrop history that's inconsistent with that idea because in the National City Lines case, the Supreme Court addressed this argument that you can apply forum nonconvenience to a Sherman Act, Clayton Act case. And the Supreme Court said absolutely not. This jurisdictional venue structure in those antitrust statutes is inconsistent with the open-ended, you know, requires a lot of litigation in every case for a nonconvenience test. It would be surpassing strange for Congress to sort of put that open-ended test back in when they're incorporating language from a statute where the Supreme Court had said we're not doing that sort of open-ended balancing. Thank you, Your Honors. All right. Thank you very much. The case is submitted.